**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 30, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

SIMONA GALLEGOS,

     Defendant - Appellant.

No. 13-6236

_____

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:12-CR-00297-2)**
_____

James L. Hankins, Edmond, Oklahoma, for Defendant-Appellant.

David McCrary, Assistant United States Attorney (Sanford C. Coats, United States Attorney, and Leslie M. Maye, Assistant United States Attorney, with him on the brief), Oklahoma City, Oklahoma, for Plaintiff-Appellee.
_____

Before **BRISCOE**, Chief Judge, **TYMKOVICH** and **MORITZ**, Circuit Judges.
_____

**MORITZ**, Circuit Judge.
_____

Simona Gallegos appeals her convictions for one count of conspiracy to distribute methamphetamine and to possess methamphetamine with intent to distribute in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(a)(1); two counts of possession of methamphetamine with intent to distribute in violation of 21 U.S.C.

§ 841(a)(1); and one count of use of a communication facility to facilitate the distribution of methamphetamine in violation of 21 U.S.C. § 843(b).

Gallegos argues (1) the district court erred in admitting the hearsay statements of her alleged co-conspirators; (2) the government presented insufficient evidence to support her convictions; (3) a fatal variance occurred because the indictment charged a single large conspiracy but the evidence at trial proved only multiple smaller conspiracies; (4) the district court erred in admitting testimony regarding her co-defendant's post-arrest request for an attorney; and (5) the cumulative effect of these errors requires reversal. Because sufficient evidence supports Gallegos' convictions and because her remaining claims do not warrant reversal under our plain-error test, we affirm.

## BACKGROUND

Simona Gallegos' convictions arose from law enforcement's investigation into the activities of Iran Zamarripa, the regional supervisor of an international methamphetamine ring. Based on her alleged involvement in Zamarripa's organization, Gallegos was tried alongside her common-law husband, Pedro Juarez, and two of their alleged co-conspirators, Bani Moreno and Edgardo Josue Aguilar.

At trial, Special Agent Casey Cox testified about Moreno's post-arrest request for an attorney. Although Moreno initially agreed to speak with Cox, after Cox began to probe Moreno's involvement in the drug trade, Moreno declined to answer further questions without an attorney present. None of the defendants' attorneys objected to

2

Cox's testimony, and Moreno declined the district court's offer of a curative instruction.

Unlike Moreno and Aguilar, both of whom purchased methamphetamine from Zamarripa by the pound, Gallegos assisted Juarez in obtaining considerably smaller quantities of methamphetamine from Zamarripa and his local manager, Alfredo Resendiz. For example, on one occasion, Zamarripa instructed Resendiz to deliver a half-ounce of methamphetamine to Gallegos because Juarez was at work. Gallegos partially paid for the fronted methamphetamine ten days later. On another occasion, Gallegos met Resendiz to pick up more methamphetamine for Juarez and to pay for a half-ounce of methamphetamine Zamarripa previously fronted Juarez. On still another occasion, Gallegos called Resendiz and used a code word to order a half-ounce of methamphetamine for Juarez. In that call, Gallegos stressed the need for prompt delivery because Juarez "ha[d] people[] waiting." Intercept Tr., Supp. R., at 8. When Resendiz arrived at the apartment Gallegos and Juarez shared, he delivered the methamphetamine to Gallegos.

Based on this evidence, the jury found Gallegos guilty of one count of conspiracy to distribute methamphetamine and to possess methamphetamine with intent to distribute; two counts of possession of methamphetamine with intent to distribute; and one count of use of a communication facility to facilitate the distribution of methamphetamine. The district court sentenced Gallegos to 144 months in prison, and Gallegos appealed.

DISCUSSION

**I.    Gallegos forfeited her hearsay argument.**

Gallegos first argues the district court erred in admitting hearsay statements of her alleged co-conspirators absent independent evidence she conspired with them to distribute methamphetamine. But because Gallegos fails to identify any specific statements on appeal, we decline to reach this issue. *See United States v. Thornburgh*, 645 F.3d 1197, 1210 (10th Cir. 2011) (refusing to address appellant's challenge to admission of co-conspirator statements when appellant neglected to identify any specific statements on appeal; failure to identify specific statements prevented court from determining whether statements were offered for truth of matters asserted); *see also United States v. Lewis*, 594 F.3d 1270, 1284-85 (10th Cir. 2010) (declining to examine each record page cited in appellant's brief to determine whether any co-conspirator statements contained therein were hearsay and, if so, whether their admission prejudiced appellant).

**II.    The government presented sufficient evidence to support Gallegos' convictions, and any prejudice arising from the alleged variance does not warrant reversal under our plain-error test.**

*A.    Sufficiency of the Evidence*

Next, Gallegos challenges the sufficiency of the evidence supporting all four of her convictions. Although the parties disagree as to whether we should review Gallegos' sufficiency claims de novo or for plain error, a conviction in the absence of sufficient evidence will almost always satisfy all four plain-error requirements. Thus, our review for plain error in this context differs little from our de novo review of a

properly preserved sufficiency claim. *See United States v. Rufai*, 732 F.3d 1175, 1189 (10th Cir. 2013) (quoting *United States v. Duran*, 133 F.3d 1324, 1335 n.9 (10th Cir. 1998)) (concluding plain-error review and review for sufficient evidence "'usually amount to largely the same exercise'"). Under the sufficiency-of-the-evidence test, we view the evidence in the light most favorable to the government and ask whether the evidence—and any reasonable inferences to be drawn from it—would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt. *United States v. Green*, 435 F.3d 1265, 1272 (10th Cir. 2006).

Likening the facts of this case to those in *United States v. Evans*, 970 F.2d 663 (10th Cir. 1992), Gallegos insists we must reverse her conspiracy conviction under the "buyer-seller rule" because the government established only that she obtained methamphetamine for personal use. *See United States v. Patterson*, 713 F.3d 1237, 1245-46 (10th Cir. 2013) (pointing out that an individual who merely purchases drugs from a member of a conspiracy is not automatically part of the conspiracy); *United States v. Watson*, 594 F.2d 1330, 1337 (10th Cir. 1979) (recognizing "that proof of the existence of a buyer-seller relationship, without more, is inadequate to tie the buyer to a larger conspiracy").

But unlike in *Evans*, where the evidence demonstrated the defendant obtained crack-cocaine from a member of the conspiracy on a single occasion and solely for her personal use, the evidence here established Gallegos *repeatedly* procured methamphetamine from Resendiz on Juarez's behalf, knowing full well Juarez planned to distribute it. 970 F.2d at 673. Under those circumstances, the buyer-seller

5

rule does not apply. *See United States v. Ivy*, 83 F.3d 1266, 1285-86 (10th Cir. 1996) (explaining that purpose of buyer-seller rule is to separate consumers who do not intend to redistribute drugs for profit from distributors who intend to further objective of conspiracy by distributing drugs to others).

Gallegos disagrees, arguing the buyer-seller rule precludes her conviction *even if* she purchased methamphetamine with the intent to distribute. Citing *United States v. Johnson*, 592 F.3d 749 (7th Cir. 2010), she maintains that "a drug purchaser does not enter into a conspiracy with his supplier simply by reselling the drugs to his own customers." *Id.* at 752. But *Johnson*'s interpretation of the buyer-seller rule is contrary to this court's precedent. *See Ivy*, 83 F.3d at 1285-86 (explaining buyer-seller rule applies only to end users).

Moreover, in *Johnson* the Seventh Circuit specifically recognized that evidence of fronting coupled with evidence of repeat drug purchases is sufficient "to distinguish a conspiracy from a nonconspiratorial buyer-seller relationship." 592 F.3d at 755 n.5. Here, Gallegos was involved in multiple drug transactions with Resendiz, and she both received and paid for fronted drugs. Thus, even under *Johnson*'s broader interpretation of the buyer-seller rule, a reasonable jury could have found Gallegos acted as more than a mere buyer.

To support Gallegos' conspiracy conviction, the government was required to prove she (1) agreed with at least one other person to violate the law, (2) knew of the conspiracy's objectives, and (3) knowingly and voluntarily involved herself in the conspiracy. The government also was required to demonstrate (4) interdependence

6

among the co-conspirators. *See United States v. Foy*, 641 F.3d 455, 465 (10th Cir. 2011).

Here, the jury heard a recorded telephone call during which Gallegos asked Resendiz to deliver a half-ounce of methamphetamine to the apartment she shared with Juarez because Juarez "ha[d] people[] waiting." Intercept Tr., Supp. R., at 8. When Resendiz arrived, he delivered the requested methamphetamine to Gallegos. From this evidence alone, the jury could have inferred an agreement to distribute methamphetamine.[1] *See United States v. Johnson*, 42 F.3d 1312, 1319 (10th Cir. 1994) (explaining jury may infer agreement between two or more parties based on circumstantial evidence indicating concerted action directed toward common goal).

Evidence showing Gallegos received methamphetamine from Resendiz on credit and paid Resendiz for methamphetamine he fronted Juarez provided further evidence of an agreement to distribute. *See United States v. Small*, 423 F.3d 1164, 1184 (10th Cir. 2005) (explaining that fronting arrangement strongly suggests expectation individual who receives drugs on credit will redistribute them for profit); *United States v. Nichols*, 374 F.3d 959, 961, 969 (10th Cir. 2004), *cert. granted,*

---

[1] Gallegos complains the government did not prove she agreed to distribute 85 pounds of methamphetamine as alleged in the indictment. But it didn't have to. *See United States v. Anaya*, 727 F.3d 1043, 1050-51 & n.4 (10th Cir. 2013), *cert. denied*, 135 S. Ct. 419 (2014) (explaining government need not prove defendant "knew of every type or amount of drug trafficked" to support conspiracy conviction). Moreover, the government presented sufficient evidence to prove Gallegos personally took part in drug deals involving more than two ounces of methamphetamine, which is more than the 50 grams for which the jury found the conspiracy responsible for sentencing purposes. *See* 21 U.S.C. 841(b)(1)(A) (authorizing prison sentence of ten years to life when amount of methamphetamine possessed with intent to distribute exceeds 50 grams).

*judgment vacated*, 543 U.S. 1113, *opinion reinstated*, 410 F.3d 1186 (10th Cir. 2005) (hypothesizing that evidence of fronting arrangement would have allowed reasonable jury to find existence of agreement to distribute between defendant and supplier).

The same evidence also was sufficient to prove Gallegos knew of the conspiracy's objectives and knowingly and voluntary involved herself in the conspiracy. Based on Gallegos' phone call to Resendiz—during which she used code to request delivery of a half-ounce of methamphetamine to the apartment she shared with Juarez because Juarez had people "waiting"—a reasonable jury could conclude Gallegos was privy to the conspiracy's goal of distributing methamphetamine. And from Gallegos' repeated actions in furtherance of this goal, *e.g.*, calling Resendiz to order methamphetamine, accepting delivery of methamphetamine when Juarez was unavailable, and making payments for methamphetamine on Juarez's behalf, a reasonable jury could also infer her knowing and voluntary involvement. *See United States v. Bell*, 154 F.3d 1205, 1208 (10th Cir. 1998) (explaining jury may presume defendant who acts in furtherance of conspiracy's goals is knowing participant).

Finally, evidence of Gallegos' participation in the fronting arrangement also demonstrated interdependence. *See United States v. Acosta-Gallardo*, 656 F.3d 1109, 1124 (10th Cir. 2011); *Small*, 423 F.3d at 1185 (citing *United States v. Roberts*, 14 F.3d 502, 511 (10th Cir. 1993)) (reasoning fronting arrangement creates situation of mutual dependence because seller's ability to front drugs depends on receipt of money due). Further, Gallegos benefitted from her role in the arrangement even if she did not profit from it financially because her participation aided the endeavors of her

common-law husband. Aplt. Br. at 29. *See United States v. Hamilton*, 587 F.3d 1199, 1209-10 & n.6 (10th Cir. 2009) (finding sufficient evidence of interdependence when defendant's loyalty to half-brother, rather than desire to profit financially, motivated him to assist in illegal drug business).

We conclude the government presented sufficient evidence to prove Gallegos purchased methamphetamine, not merely for her personal use, but as part of a conspiracy to distribute it. And because Gallegos' challenges to the sufficiency of the evidence supporting her convictions for possession with intent to distribute and use of a communication facility rely entirely on the alleged lack of evidence supporting her conspiracy conviction, we reject those challenges as well.

### B. Variance

In a related argument, Gallegos contends the government's evidence failed to prove the conspiracy charged in the indictment, *i.e.*, the evidence varied from the indictment. *See United States v. Carnagie*, 533 F.3d 1231, 1237 (10th Cir. 2008) (explaining variance arises when indictment charges single large conspiracy but government proves only existence of multiple smaller conspiracies at trial). In the context of a conspiracy conviction, we treat a variance claim as a challenge to the sufficiency of the evidence establishing that each defendant was a member of the same conspiracy. *Id*.

Because Gallegos did not raise her variance claim below, we review only for plain error. *See United States v. Bailey*, 327 F.3d 1131, 1142 (10th Cir. 2003). To show plain error, Gallegos must demonstrate (1) an error, (2) that is clear or obvious

9

under current law, and (3) that affected her substantial rights. If Gallegos makes such a showing, we may reverse only if (4) the error seriously affected the fairness, integrity, or public reputation of the proceedings. *United States v. Cooper*, 654 F.3d 1104, 1117 (10th Cir. 2011).

Gallegos contends the government proved—if anything—that she conspired with Juarez alone, rather than with the members of the larger conspiracy. Gallegos argues this alleged variance created "a substantial 'spillover' effect" by permitting the jury "to associate [her] with crimes for which there was no evidence of her involvement (*i.e.*, dealing with a Mexican drug cartel to acquire huge quantities of meth, shipping into the United States, operating a distribution network with interstate and even international scope, and distributing 85 pounds of meth)." Aplt. Br. at 30.

But even assuming the existence of a variance that constitutes clear and obvious error, we find little risk of any "spillover" here, let alone one so prejudicial as to satisfy the third prong of the plain-error test. *See United States v. Rosales-Miranda*, 755 F.3d 1253, 1258 (10th Cir. 2014) (explaining error affects defendant's substantial rights for purposes of plain-error test if defendant demonstrates reasonable probability result of proceeding would have been different but for alleged error).

To determine whether a variance prejudiced the defendant in the context of an alleged conspiracy, we focus on the possibility of jury confusion and the strength of the evidence proving the defendant's involvement in the smaller conspiracy. *See Carnagie*, 533 F.3d at 1241, 1244. In assessing the possibility of jury confusion, we

10

consider, among other things, the number of defendants tried together and the number of separate conspiracies proved. We also look to the complexity of the evidence and the jury's ability to distinguish the evidence against one defendant from the evidence against his or her co-defendants. *See id.* at 1242.

Here, Gallegos was tried with only three other defendants and the government proved a maximum of three individual conspiracies. Moreover, the jury could have easily distinguished the evidence against Gallegos, who assisted in procuring methamphetamine in smaller quantities for her common-law husband, from the evidence against her co-defendants Moreno and Aguilar, who purchased methamphetamine from Zamarripa by the pound. And overwhelming evidence established Gallegos' involvement in a smaller conspiracy with Juarez and Resendiz to distribute at least fifty grams of methamphetamine. Under these circumstances, Gallegos cannot show a reasonable probability the result of her trial would have been different but for the alleged variance. Thus, she fails to satisfy the third prong of our plain-error test.

She also fails to satisfy the fourth prong. Given the overwhelming evidence establishing Gallegos' involvement in the smaller conspiracy, we conclude the alleged variance did not seriously affect the fairness, integrity, or public reputation of the proceedings. *See United States v. Gonzalez Edeza*, 359 F.3d 1246, 1251 (10th Cir. 2004) (interpreting fourth prong of plain-error test to prohibit reversal when evidence of defendant's guilt on charged crime or closely related crime is "'overwhelming'

11

and 'essentially uncontroverted'" (quoting *Johnson v. United States*, 520 U.S. 461, 470 (1997))).

Gallegos' failure to meet the third and fourth prongs of our plain-error test is fatal to her claim. *See United States v. Algarate-Valencia*, 550 F.3d 1238, 1243 & n.3 (10th Cir. 2008) (declining to address first prong of plain-error test when defendant's failure to satisfy third prong was determinative of claim). Even if a variance occurred, it does not warrant reversal of Gallegos' conspiracy conviction.

## III.    Gallegos fails to show the admission of Cox's testimony warrants reversal.

Next, Gallegos argues the district court erred in admitting Cox's testimony regarding Moreno's post-arrest request for an attorney. Gallegos' failure to object to Cox's testimony again triggers plain-error review. *See United States v. Rice*, 52 F.3d 843, 845 (10th Cir. 1995) (applying plain-error review to unpreserved *Doyle*[2] claim).

Gallegos maintains the jury viewed evidence of Moreno's post-arrest request for an attorney as indicative of his guilt, and then imputed evidence of Moreno's guilt to her. But even if the jury viewed Cox's testimony as evidence of Moreno's guilt, Gallegos fails to demonstrate that admission of his testimony prejudiced her substantial rights. As discussed, the government presented distinct evidence against Moreno and Gallegos, giving the jury little reason to paint the two with the same broad brush. Moreover, in light of the overwhelming evidence of Gallegos'

---

[2] In *Doyle v. Ohio*, 426 U.S. 610, 619 (1976), the United States Supreme Court concluded the use of the petitioners' post-arrest silence for impeachment purposes violated their due process rights. *See also Wainwright v. Greenfield*, 474 U.S. 284, 286-87, 295 (1986) (applying *Doyle* to prosecutor's comment on respondent's post-arrest request for attorney).

12

involvement in at least the smaller conspiracy, Gallegos cannot show the admission of Cox's testimony about her co-defendant affected the outcome of her own trial even if the jury somehow considered it as evidence of her guilt. Thus, Gallegos fails to satisfy our plain-error test. *See Rosales-Miranda*, 755 F.3d at 1258; *Algarate-Valencia*, 550 F.3d at 1243 & n.3.

## IV.    **We reject Gallegos' claim of cumulative error.**

Finally, for the reasons discussed above, we find Gallegos' cumulative-error claim unpersuasive. Even if we assume the alleged variance and the *Doyle* violation constituted clear and obvious errors under current law, Gallegos fails to show that the effect of those errors—whether considered individually or cumulatively—warrants reversal of her convictions under plain-error review. *See United States v. Caraway*, 534 F.3d 1290, 1302 (10th Cir. 2008) (noting defendant asserting cumulative unpreserved error must "overcome the hurdles necessary to establish plain error").

## CONCLUSION

We conclude that when viewed in the light most favorable to the government, the evidence was more than sufficient to support Gallegos' convictions. And given the strength of this evidence, Gallegos' claims regarding the alleged variance and the admission of Cox's testimony fail under the third and fourth prongs of plain-error review. Gallegos' convictions are affirmed.