**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Brown*, Slip Opinion No. 2025-Ohio-2804.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-2804

THE STATE OF OHIO, APPELLEE, *v.* BROWN, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Brown*, Slip Opinion No. 2025-Ohio-2804.]**

*Criminal law—Venue—R.C. 2923.32—Venue for prosecution of defendant for engaging in a pattern of corrupt activity in violation of R.C. 2923.32 proper in county where any member of drug-selling enterprise conducted activity on behalf of the enterprise, even if defendant did not himself conduct activity on behalf of the enterprise in that county—Court of appeals' judgment affirmed.*

(No. 2024-0474—Submitted May 14, 2025—Decided August 12, 2025.)

APPEAL from the Court of Appeals for Henry County, No. 7-23-05, 2024-Ohio-627.

_____

KENNEDY, C.J., authored the opinion of the court, which DEWINE, BRUNNER, DETERS, HAWKINS, and SHANAHAN, JJ., joined. FISCHER, J., concurred in judgment only.

**KENNEDY, C.J.**

{¶ 1} In this discretionary appeal from the Third District Court of Appeals, we consider whether venue in Henry County was appropriate for appellee the State of Ohio's prosecution of appellant, Kenneth Brown, for engaging in a pattern of corrupt activity in violation of R.C. 2923.32 as a member of a criminal enterprise. To answer that question, we must determine whether another member of the enterprise participated in the affairs of the enterprise in Henry County.

{¶ 2} We conclude that because Alexandria Armijo participated in the affairs of an enterprise of which Brown was also a member by selling cocaine in Henry County, venue in Brown's criminal case was proper there. Accordingly, we affirm the court of appeals' judgment.

## Facts and Procedural History

{¶ 3} The Southside Gangster Disciples is a violent gang in the City of Toledo in Lucas County. Its members have committed murder, robbery, assaults, and other crimes. Brown, a Lucas County resident, along with his nephews Anthony and Michael Lawrence, are members of the Tecumseh Street Gang. The Tecumseh Street Gang is a subset of the Southside Gangster Disciples, whose members primarily sell cocaine on the 800 block of Tecumseh Street in Lucas County. They also had other sellers on Tecumseh who sold cocaine for them.

{¶ 4} The Tecumseh Street Gang's drug activity eventually caught the attention of law enforcement. A confidential informant had relayed to Special Agent Brad Doolittle, an agent with the Ohio Bureau of Criminal Investigation who is assigned to the Drug Enforcement Agency's task force in Toledo, that Armijo was a cocaine distributor based out of Lucas County and was dealing drugs for the Tecumseh Street Gang.

{¶ 5} As part of its investigation, law enforcement set up a controlled buy between the confidential informant and Armijo, during which the informant would

purchase cocaine from Armijo at her residence in Lucas County. After that first controlled buy, Armijo offered to drive to the City of Napoleon in Henry County, where the confidential informant lived, to sell the informant more cocaine.

{¶ 6} Part of the investigation leading to the second controlled buy included surveilling Armijo. Law enforcement observed Armijo drive from her home to the 800 block of Tecumseh Street, where she purchased cocaine from Anthony. She then drove to Henry County where she resold the cocaine to the confidential informant before returning to Lucas County. Law enforcement repeated the same operation for a third time a few weeks later.

{¶ 7} For the fourth controlled buy, law enforcement had an undercover agent purchase an increased quantity of cocaine from Armijo in Henry County. After completing the sale, she began driving back to Lucas County. Law enforcement coordinated with the Ohio State Highway Patrol to pull Armijo over for a traffic stop in Henry County, during which they found the "buy money" from the transaction with the undercover agent and arrested her. During Armijo's interview with law enforcement, she explained that each time she sold cocaine in Henry County, Anthony had sold it to her. She also explained that Anthony would "front" her the cocaine, meaning that he sold it to her on credit: under that arrangement, Armijo would keep a $500 profit from the sale after paying Anthony the purchase price.

{¶ 8} Law enforcement requested Armijo's cooperation in its investigation, and she agreed to participate in a controlled buy from Anthony. After Armijo agreed to cooperate, she drove from Henry County to Lucas County where she met Anthony in a parking lot and paid him for the fronted drugs with money that law enforcement had marked. Anthony returned to 807 Tecumseh Street and surveillance for that day ended.

{¶ 9} Law enforcement then installed surveillance cameras on the 800 block of Tecumseh Street. Surveillance revealed Brown participating in many "hand-to-

hand" exchanges of cocaine on Tecumseh Street with Anthony and Michael, as well as others. Brown and his nephews started selling cocaine on the 800 block of Tecumseh Street every day at 8 or 9 o'clock in the morning and stayed there until 7 to 10 o'clock at night.

{¶ 10} Ultimately, Brown was arrested and charged in the Henry County Court of Common Pleas with one count of engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1) and (B)(1).

{¶ 11} At trial, Brown argued that the State had not established venue in Henry County, because Armijo was not part of the Tecumseh Street Gang enterprise in Lucas County. The trial court disagreed and denied Brown's Crim.R. 29 motion for acquittal. The jury found Brown guilty of engaging in a pattern of corrupt activity and found that venue was proper in Henry County. Brown appealed.

{¶ 12} Before the Third District, Brown raised two assignments of error concerning venue: he argued that the State's evidence was insufficient to establish that he was part of an enterprise engaging in a pattern of corrupt activities in Henry County and that the jury's venue finding was against the manifest weight of the evidence because the acts that took place in Henry County were not part of an enterprise to which Brown belonged. *See* 2024-Ohio-627, ¶ 16 (3d Dist.).

{¶ 13} The Third District disagreed, concluding that a reasonable juror could find (1) that Brown was involved with Anthony and Michael in a drug-dealing enterprise operating on the 800 block of Tecumseh Street in Lucas County, *id.* at ¶ 30, (2) that the evidence at trial regarding Anthony's fronting drugs to Armijo that she then resold in Henry County brought her into the enterprise, *id.* at ¶ 31-34, and (3) that "[b]y fronting to Armijo, the enterprise came to have a direct interest in the proceeds from the drugs sold to the buyer in [Henry County] and was, therefore invested in the outcome of the transaction in Henry County," *id.* at ¶ 34. According to the Third District, venue was thus proper in Henry County.

4

{¶ 14} Brown appealed to this court, and we accepted jurisdiction over his sole proposition of law:

When the state shows that a wholesaler sold drugs to a retailer who controlled her own work, the state has not met its burden to prove that the retailer was part of the wholesaler's "enterprise" as defined by R.C. 2923.31 and 2923.32. As a result, when venue is based solely on the county to which the retailer chose to travel, the evidence of venue in that county is insufficient and a guilty verdict against the wholesaler is against the manifest weight of the evidence.

*See* 2024-Ohio-2373.

**Law and Analysis**

{¶ 15} On appeal, Brown challenges the jury's finding that venue was proper in Henry County, arguing that the State presented insufficient evidence to link Armijo's drug-dealing activity in Henry County to the Tecumseh Street Gang's enterprise in Lucas County. He also argues that the jury's decision was against the manifest weight of the evidence.

*Sufficiency of Evidence*

{¶ 16} Whether the evidence is legally sufficient to sustain a conviction is a question of law that this court reviews de novo. *State v. Groce*, 2020-Ohio-6671, ¶ 7. The court views the evidence in the light most favorable to the prosecution and asks whether "'any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.' " *State v. Dean*, 2015-Ohio-4347, ¶ 150, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds as stated in State v. Smith*, 1997-Ohio-355, ¶ 49, fn. 4.

**{¶ 17}** The appropriate standard of review for a sufficiency-of-the-evidence challenge is "whether, if believed, the evidence can sustain the verdict as a matter of law." *State v. Richardson*, 2016-Ohio-8448, ¶ 13. When reviewing whether the State met its burden of production, "an appellate court does not ask whether the evidence should be believed but, rather, whether the evidence, 'if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Pountney*, 2018-Ohio-22, ¶ 19, quoting *Jenks* at paragraph two of the syllabus.

**{¶ 18}** Brown does not contest that he was part of the Tecumseh Street Gang's drug-selling enterprise in Lucas County, but he disputes that the State presented sufficient evidence establishing that Armijo's sale of cocaine in Henry County was part of that enterprise. If Armijo and Brown were part of the same enterprise, then venue was proper in Henry County. *See United States v. Crozier*, 259 F.3d 503, 519 (6th Cir. 2001).

**{¶ 19}** R.C. 2923.32(A)(1) provides that "[n]o person employed by, or *associated with*, *any enterprise* shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity." (Emphasis added.) The definition of "[e]nterprise," which is "remarkably open-ended," includes "'any organization, association, or group of persons associated in fact although not a legal entity.'" *State v. Beverly*, 2015-Ohio-219, ¶ 8, quoting R.C. 2923.31(C)(1).

**{¶ 20}** The General Assembly modeled R.C. 2923.32 after a federal law, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. 1961 et seq. *See State v. Schlosser*, 79 Ohio St.3d 329, 332 (1997).

**{¶ 21}** One way the State can show that a person was employed by or associated with an enterprise is by showing that the person entered into a conspiracy with another person who was a member of that enterprise. *See United States v. Godwin*, 765 F.3d 1306, 1323 (11th Cir. 2014), citing *United States. v. Browne*,

505 F.3d 1229, 1264 (11th Cir. 2007). That is because an associated-in-fact enterprise "shares important characteristics with the traditional conspiracy of criminal law." *United States v. Griffin*, 660 F.2d 996, 999 (4th Cir. 1981). A person who merely agrees "to participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity brings [him or her] within the conspiracy." *United States v. Gonzalez*, 921 F.2d 1530, 1540 (11th Cir. 1991).

{¶ 22} Of course, not all drug sales involve a conspiracy. *See United States v. Bostick*, 791 F.3d 127, 139 (D.C.Cir. 2015). Someone who buys drugs from another person but does not have an agreement with that person to resell the drugs has not formed a conspiracy with the seller. *See United States v. Brown*, 726 F.3d 993, 1001 (7th Cir. 2013).

{¶ 23} But when a buyer agrees with the seller to distribute the drugs that the buyer purchased, a conspiracy forms because "there is an agreement beyond the mere sale for personal consumption." *United States v. Kozinski*, 16 F.3d 795, 808 (7th Cir. 1994).

{¶ 24} The Sixth Circuit Court of Appeals has recognized that the trust involved in selling drugs on credit (i.e., "fronting" drugs) "suggests more than a buyer-seller arrangement" between the parties to the transaction. *United States v. Nesbitt*, 90 F.3d 164, 167 (6th Cir. 1996). Ultimately, "evidence of fronting coupled with evidence of repeat drug purchases is sufficient 'to distinguish a conspiracy from a nonconspiratorial buyer-seller relationship.'" *United States v. Gallegos*, 784 F.3d 1356, 1360 (10th Cir. 2015), quoting *United States v. Johnson*, 592 F.3d 749, 755, fn. 5 (7th Cir. 2010).

{¶ 25} We now turn to the question whether Armijo was associated with the same drug-sale enterprise as Brown. The State presented ample evidence demonstrating that Armijo (1) had knowledge of the Tecumseh Street Gang's drug-selling enterprise, (2) knew and interacted with multiple members of the gang, (3) had an agreement with Anthony and the enterprise to resell drugs on behalf of

the enterprise, and (4) had purchased drugs from a member of the enterprise on credit for resale purposes, meaning that she participated in the enterprise's affairs through a pattern of corrupt activity.

{¶ 26} Under the agreement Armijo had with Anthony, she purchased drugs on credit from him to resell: she made several drug purchases from Anthony for the purpose of resale, and at least once she purchased cocaine from him on credit, making a $500 profit when she sold the cocaine to another party—that alone was enough to form a conspiracy. *See Gallegos* at 1360. Armijo testified that she purchased and resold drugs under that agreement between three and eight times. And when Anthony was unavailable, she purchased drugs from other people in the Tecumseh Street Gang.

{¶ 27} This evidence is sufficient to show that Armijo was associated with the Tecumseh Street Gang's drug-selling enterprise. Therefore, because Armijo associated with the same enterprise as Brown, and because her conduct extended to Henry County, venue for Brown's trial was proper there.

*Manifest Weight of the Evidence*

{¶ 28} Within Brown's single proposition of law, he also argues that his conviction is against the manifest weight of the evidence because the State failed to establish venue. This court does not ordinarily consider challenges to the manifest weight of the evidence in noncapital cases. *See State v. Tenace*, 2006-Ohio-2417, ¶ 36; *State v. Were*, 2008-Ohio-2762, ¶ 131; *State v. Sanders*, 2001-Ohio-189, ¶ 56; *State v. Stewart*, 176 Ohio St. 156, 160 (1964). And we ordinarily expect a proposition of law to be limited to a discrete legal issue that "could serve as a syllabus for the case if the appellant prevails," Rule 16.02(B)(4).

{¶ 29} Nonetheless, despite the irregular manner by which Brown's manifest-weight argument has reached us, we will—in this instance—address the argument. But we caution future litigants that we expect such arguments to be raised separately and that we do not ordinarily consider manifest-weight arguments

8

in noncapital cases.

{¶ 30} In a manifest-weight-of-the-evidence challenge, sitting as the "thirteenth juror," this court looks at the entire record and "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered,'" *State v. Thompkins*, 1997-Ohio-52, ¶ 25, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

{¶ 31} We will vacate a jury's verdict and order a new trial "'only in the exceptional case in which the evidence weighs heavily against the conviction,'" *Thompkins* at ¶ 25, quoting *Martin* at 175. Accordingly, we review the record to determine whether the "jury clearly lost its way," *Thompkins* at ¶ 25. Brown argues that Armijo's testimony that she was not a member of the Tecumseh Street Gang, that she retained the profits from her drug sales, and that the Tecumseh Street Gang did not tell her who to sell to demonstrate that the jury's finding that Armijo was part of the Tecumseh Street Gang's enterprise was against the manifest weight of the evidence.

{¶ 32} But Armijo did not need to be an official member of the Tecumseh Street Gang to join its drug-selling enterprise. Like the federal act, R.C. 2923.32 is designed "broadly enough to encompass a wide range of criminal activity, taking many different forms and likely to attract a broad array of perpetrators operating in many different ways," *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 248-249 (1989). A reasonable juror could conclude from the evidence presented, including the fact that Armijo purchased cocaine from Anthony on credit, that Armijo was associated with the Tecumseh Street Gang's drug-selling enterprise and that she participated in its affairs through a pattern of corrupt activity. We therefore conclude that the jury did not "clearly los[e] its way," *Thompkins*, 1997-Ohio-52, at ¶ 25.

**Conclusion**

**{¶ 33}** Construing the evidence in the light most favorable to the State, we hold that there was legally sufficient evidence for the jury to conclude that Armijo participated in the affairs of the Tecumseh Street Gang's enterprise, of which Brown was a member. As for Brown's manifest-weight-of-the-evidence challenge, a review of the record gives us no reason to believe that the jury mistakenly found that venue was proper in Henry County. Therefore, we affirm the judgment of the Third District Court of Appeals.

Judgment affirmed.

_____

Gwendolyn Howes-Gebers, Henry County Prosecuting Attorney, for appellee.

Elizabeth R. Miller, Ohio Public Defender, and Stephen P. Hardwick, Assistant Public Defender, for appellant.

Steven L. Taylor, urging affirmance for amicus curiae Ohio Prosecuting Attorneys Association.

Dave Yost, Attorney General, Mathura J. Sridharan, Solicitor General, and Samuel C. Peterson, Deputy Solicitor General, urging affirmance for amicus curiae Ohio Attorney General Dave Yost.

_____