[Cite as *State v. McKnight*, 2026-Ohio-2346.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

STATE OF OHIO,                          :

    Plaintiff-Appellee,                 :        Case Nos.  25CA14
                                                       25CA15
    v.                                  :

RICKEY L. MCKNIGHT,                     :        DECISION AND JUDGMENT ENTRY

    Defendant-Appellant.                :

_____

APPEARANCES:

Karyn Justice, Portsmouth, Ohio, for appellant.[1]

Brigham M. Anderson, Lawrence County Prosecuting Attorney, and
Steven K. Nord, Lawrence County Assistant Prosecuting Attorney,
Ironton, Ohio, for appellee.
_____
CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:6-9-26
ABELE, J.

{¶1} This is a consolidated appeal from a Lawrence County Common Pleas Court judgment of conviction and sentence and a judgment that imposed sentence for a violation of community-control sanctions.  Rickey L. McKnight, defendant below and appellant herein, assigns the following error for review:

> "MR. MCKNIGHT'S CONVICTIONS ARE NOT
> SUPPORTED BY THE MANIFEST WEIGHT OF
> SUFFICIENT EVIDENCE."

---

[1] Different counsel represented appellant during the trial court proceedings.

{¶2} On December 10, 2024, Ironton Police Department Officer Corey Allison responded to a reported burglary and assault at the premises where J.M. resided. Upon the officer's arrival, J.M. reported that appellant had entered the premises and assaulted him.

{¶3} A Lawrence County Grand Jury subsequently returned an indictment that charged appellant with (1) aggravated burglary, in violation of R.C. 2911.11(A)(1), and (2) felonious assault, in violation of R.C. 2903.11(A)(1). Appellant entered not guilty pleas.

{¶4} In March 2025, the trial court held a jury trial. At trial, J.M. testified that he had been renting a residence from appellant's family. J.M. explained that he knew that appellant had a key to the residence, but he did not give appellant permission to enter the residence.

{¶5} J.M. stated that, on December 10, 2024, while he was sleeping, appellant entered the residence and hit J.M. on the foot to awaken him. After appellant hit J.M. on the foot, he rose from the bed and told appellant to leave. J.M. indicated that appellant then pushed J.M. and caused him to fall into a drum set. J.M. stated that after he got up and pushed appellant away, appellant then hit him near his eye. J.M. asserted that as a result of the incident, he suffered a fractured vertebra and a broken rib and required five stitches on his eyelid.

{¶6} Ironton Police Captain Brandon Blankenship testified that he spoke with appellant about the incident. Blankenship stated that appellant explained the circumstances that surrounded the incident and related that appellant went to J.M.'s residence to ask about $20 that J.M. owed appellant. J.M. told appellant that he was not paying appellant $20. J.M. then poked appellant in the eye. Blankenship stated that appellant alleged that he had acted in self-defense.

{¶7} Appellant testified in his defense and explained that, on December 10, 2024, he went to the residence to ask J.M. to pay appellant the money that J.M. owed him. Appellant stated that he used his key to enter the residence. Appellant claimed that he had a verbal agreement with J.M. "to come and go as [he] please[d] day or night."

{¶8} Appellant indicated that, when he entered the residence, J.M. was asleep, so he yelled at him to awaken him. Appellant stated that when J.M. awoke and asked appellant what he wanted, appellant told J.M. he wanted to ask about the money that J.M. owed. J.M. then informed appellant that he was not "giving [appellant] a damn thing" and then "headbutted" appellant. Appellant stated that J.M. fell into the drum set, and appellant "grabbed him by the hair of the head" to restrain him. Appellant contended that he was trying to prevent J.M.

from fighting with him and that he only acted in self-defense. After appellant's testimony, the defense rested.

{¶9} After hearing the evidence, the jury found appellant not guilty of aggravated burglary, but guilty of burglary and felonious assault.

{¶10} The trial court later sentenced appellant to serve 18 months in prison for the burglary offense and 6 years in prison for the felonious assault offense. This appeal followed.

{¶11} In his sole assignment of error, appellant asserts that his convictions are against "the manifest weight of sufficient evidence." Regarding his burglary conviction, appellant asserts that the greater amount of the evidence shows that he did not (1) "gain access to the property by force, stealth, or deception," or (2) trespass into the house. Appellant further claims that the record does not contain sufficient evidence to establish either of the foregoing elements.

{¶12} Appellant also argues that his felonious assault conviction is against the manifest weight of the evidence. He contends that the State "failed to prove beyond a reasonable doubt that he did not act in self-defense."

A

Standard of Review

{¶13} We initially observe that appellant's assignment of

error appears to blend the "quantitatively and qualitatively different" standards that apply to sufficiency and manifest-weight challenges. *See State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997) ("The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different."). A challenge to the manifest weight of the evidence requires a court to evaluate whether the greater amount of credible evidence offered at trial supports the defendant's conviction. *See id.* at 387, quoting *Black's Law Dictionary* 1594 (6th Ed.1990) ("Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'"). A court that considers a manifest weight challenge must "'review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses.'" *State v. Beasley*, 2018-Ohio-493, ¶ 208, quoting *State v. McKelton*, 2016-Ohio-5735, ¶ 328. Reviewing courts also must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. *See Eastley v. Volkman*, 2012-Ohio-2179, ¶ 21; *State v. Issa*, 93 Ohio St.3d 49, 67 (2001); *State v. Murphy*, 2008-Ohio-1744, ¶ 31 (4th Dist.). "'Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford

substantial deference to its determinations of credibility.'"

*Barberton v. Jenney*, 2010-Ohio-2420, ¶ 20, quoting *State v.*

*Konya*, 2006-Ohio-6312, ¶ 6 (2d Dist.), quoting *State v. Lawson*,

1997 WL 476684 (2d Dist. Aug. 22, 1997).  As the *Eastley* court

explained:

> "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts....
>     If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'"

2012-Ohio-2179, at ¶ 21, quoting *Seasons Coal Co., Inc. v.*

*Cleveland*, 10 Ohio St.3d 77, 80, fn.3 (1984), quoting 5 Ohio

Jurisprudence 3d, Appellate Review, Section 60, at 191–192

(1978).

{¶14} Thus, an appellate court will leave the issues of

evidence weight and witness credibility to the fact finder, as

long as a rational basis exists in the record for its decision.

*State v. Picklesimer*, 2012-Ohio-1282, ¶ 24 (4th Dist.); *accord*

*State v. Howard*, 2007-Ohio-6331, ¶ 6 (4th Dist.) ("We will not

intercede as long as the trier of fact has some factual and

rational basis for its determination of credibility and

weight").

{¶15} Accordingly, a judgment of conviction is not against the manifest weight of the evidence when the record contains substantial, credible evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established. *See State v. Leonard*, 2004-Ohio-6235, ¶ 81, quoting *State v. Getsy*, 84 Ohio St.3d 180, 193–194 (1998), citing *State v. Eley*, 56 Ohio St.2d 169 (1978), syllabus ("'The question to be answered when a manifest-weight issue is raised is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt'" [emphasis omitted.]).  A court may reverse a judgment of conviction only if it appears that the fact finder, when it resolved the conflicts in evidence, "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983); *accord State v. Brown*, 2025-Ohio-2804, ¶ 31.  A reviewing court should find a conviction against the manifest weight of the evidence only in the "'exceptional case in which the evidence weighs heavily against the conviction.'"  *Thompkins*, 78 Ohio St.3d at 387, quoting *Martin*, 20 Ohio App.3d at 175; *accord State v. Clinton*, 2017-Ohio-9423, ¶ 166; *State v. Lindsey*, 87 Ohio St.3d 479, 483

(2000).

{¶16} On the other hand, a challenge to the sufficiency of the evidence does not permit a reviewing court to assess the credibility of the evidence. *See Brown*, 2025-Ohio-2804, at ¶ 17, quoting *State v. Pountney*, 2018-Ohio-22, ¶ 19, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, fn. 4 (1997) (sufficiency review does not allow a reviewing court to "ask whether the evidence should be believed but, rather, whether the evidence, '"if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt"'"); *see generally State v. Balmert*, 2025-Ohio-5588, ¶ 10, quoting *State v. Groce*, 2020-Ohio-6671, ¶ 7 (a sufficiency challenge requires a reviewing court to determine "'whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt'"). Instead, the question is whether the State's evidence, if believed, is legally sufficient to support a defendant's conviction. *See Thompkins*, 78 Ohio St.3d at 386 ("sufficiency is a test of adequacy").

B

Burglary

{¶17} Appellant first contends that the record does not contain sufficient evidence to support his burglary conviction and that his conviction is against the manifest weight of the evidence.  Appellant claims that the evidence fails to establish that he trespassed by force, stealth, or deception.

{¶18} R.C. 2911.12(B) sets forth the elements of the burglary offense at issue.  The statute provides that "[n]o person, by force, stealth, or deception, shall trespass in a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present."  *Id.*  For purposes of this offense, trespass means to "knowingly enter or remain on the land or premises of another" without a privilege to do so.  *See* R.C. 2911.10; R.C. 2911.21(A)(1).

1

Trespass

{¶19} We first consider appellant's argument that the evidence fails to establish that he trespassed on the premises. He appears to contend that he could not have committed a trespass because (1) he was the landlord and had a key to the residence, and (2) the victim understood that appellant "could come and go to the house."  We believe, however, that appellant's assertions are without merit.

{¶20} Regarding appellant's assertion that he did not commit a trespass because he was the landlord and had a key, the law is well-established that a person "can commit a trespass and burglary against property of which one is the legal owner if another has control or custody of that property." *State v. Lilly*, 87 Ohio St.3d 97, 102 (1999).  Thus, appellant's purported status as the landlord and key holder does not prevent him from being a trespasser.

{¶21} Furthermore, even if the victim had given appellant permission to enter the premises, "a [person] who initially gains entry to one's home by consent may subsequently become a trespasser if consent is withdrawn." *State v. Holloway*, 38 Ohio St.3d 239, 243 (1988), citing *State v. Steffen*, 31 Ohio St.3d 111 (1987).  Any consent is considered withdrawn if the defendant engages in an offense of violence against the occupant.  *State v. Knuff*, 2024-Ohio-902, ¶ 318 (the defendant's privilege to remain on the premises terminated after the defendant started assaulting the occupants); *Steffen* at 115 (privilege given to a door-to-door salesman to enter the home terminated the moment he commenced the assault on the victim); *State v. Wisecup*, 2004-Ohio-5652, ¶ 11 (12th Dist.) (even if the defendant's initial entry was lawful, the defendant's privilege to remain on the premises "terminated upon the commencement of his conduct constituting gross sexual imposition").

{¶22} In the case at bar, therefore, even if the evidence had shown that the victim had given appellant consent to enter the premises, the victim did not give appellant permission to remain on the premises once appellant entered the victim's bedroom and began to assault him.  Not only did the victim tell appellant to leave, thereby revoking any consent given, but appellant's attack upon the victim withdrew any consent the victim may have given to appellant to enter or to remain on the premises.  *See State v. Campbell*, 2019-Ohio-5004, ¶ 51 (6th Dist.) (any privilege to remain in the residence "terminated when [the defendant] started threatening [the victim] and chasing her with guns"); *State v. Metcalf*, 2012-Ohio-6045, ¶ 21 (2d Dist.) ("any privilege that [the defendant] may have had to enter [the victim]'s house was revoked or terminated the moment he shot [the victim] in the head"); *State v. Stewart*, 2006-Ohio-1071, ¶¶ 16-21 (8th Dist.) (any permission the defendant "may have had to be in the apartment was negated the moment [the victim] told him to leave"); *State v. Bouchioua*, 2000 WL 336434, *13 (4th Dist. Mar. 27, 2000) ("any privilege appellant may arguably have had to enter or to remain in the victim's home terminated once he began assaulting her").

{¶23} Consequently, we do not agree with appellant that the State failed to present sufficient evidence to establish the element of trespass or that the jury's finding that appellant

trespassed is against the manifest weight of the evidence.

2

Stealth or Deception

**{¶24}** Appellant also asserts that the evidence does not establish that he trespassed by stealth or deception.  Regarding deception, appellant contends that the evidence does not show that he "made any statements or committed any acts that would create a false impression in [the victim's] mind."

**{¶25}** Appellant further contends that the evidence fails to show that he trespassed by stealth.  He states that, rather than acting in a stealthy manner when he entered the victim's residence, he announced his presence by shouting to the victim. Appellant contends that he "was cavalier, did not act with a sense of urgency, and did nothing to avoid being detected."  He additionally claims that he "did not act in a secret, sly or clandestine way to avoid discovery."

**{¶26}** The State counters that the evidence establishes that appellant used stealth or deception to enter the victim's residence.[2]  The State maintains that appellant's use of his key to enter the residence, rather than ringing the doorbell, knocking on the door, or calling the victim on the phone to

---

[2] At trial, the State did not argue that appellant trespassed (i.e., entered or remained on the premises) by force.  Moreover, the State has not asserted on appeal that appellant trespassed by force.  We therefore do not address the issue.

notify him that he would be coming over, demonstrates stealth. The State further asserts that appellant's stealth or deception continued when he entered the victim's bedroom and slapped the victim's foot to awaken him.

{¶27} We begin by considering appellant's assertion that he did not trespass by stealth.

> Merriam-Webster defines "stealth" as "intended not to attract attention." *Merriam-Webster's Collegiate Dictionary* 1221 (11th Ed.2003). And "stealth" has been defined in caselaw as "'any secret, sly or clandestine act to avoid discovery and to gain entrance into or to remain within a residence of another without permission.'" *State v. Ward*, 85 Ohio App.3d 537, 540, 620 N.E.2d 168 (3d Dist.1993), quoting *State v. Lane*, 50 Ohio App.2d 41, 47, 361 N.E.2d 535 (10th Dist.1976).

*State v. Bertram*, 2023-Ohio-1456, ¶ 14.

{¶28} Courts generally have held that evidence that the defendant "sneak[ed] up on sleeping or distracted occupants" establishes that the defendant acted with stealth. *See State v. Silver*, 2025-Ohio-2771 (8th Dist.). In *Silver*, for example, the court upheld the defendant's aggravated burglary conviction when the evidence showed that he trespassed by stealth into the sleeping victims' rooms. The evidence presented at trial demonstrated that the defendant "sneaked into the murdered victims' room — catching them all by surprise to the extent that their bodies were found where they were sleeping or lying." *Id.* at ¶ 35. The court concluded that the defendant's conduct established that he "actively avoid[] discovery" when he entered

the sleeping victims' rooms and that his conduct thus illustrated that he trespassed by stealth. *Id.*; *see also State v. Stone*, 2024-Ohio-177, ¶ 27 (2d Dist.) ("[e]ntering a house at night while 'under the cover of darkness,' particularly when occupants are likely to be asleep, is sufficient to establish the element of stealth").

{¶29} In the case sub judice, the State presented sufficient evidence to establish that appellant trespassed by stealth. The State's evidence showed that appellant entered the victim's home using a key and did not announce his presence. He then proceeded to step into the room where the victim was sleeping and hit the victim on the foot to awaken him. The jury could have reasonably concluded that appellant's conduct in secretly entering the victim's home while he slept demonstrated stealth. *See Silver*, 2025-Ohio-2771, at ¶ 35 (8th Dist.); *Stone*, 2024-Ohio-177, at ¶ 27 (2d Dist.); *see also State v. Steen*, 2020-Ohio-4598, ¶ 29 (2d Dist.), citing *State v. Buelow*, 2004-Ohio-6052, ¶ 64 (2d Dist.) ("a defendant's uninvited entry into an unlocked house in the middle of the night while the occupants were sleeping was sufficient to establish the element of stealth to support a burglary conviction"); *State v. Stewart*, 2006-Ohio-1071, ¶ 18 (8th Dist.) (evidence sufficient to establish the element of stealth when the defendant "secretly entered [the victim's] home after she went to sleep"); *State v. Bell*, 1994 WL

29877, *3 (12th Dist. Jan. 31, 1994) (evidence that the defendant entered the victim's "home by opening the door without first knocking, ringing the doorbell, or obtaining an answer or permission from someone in the house is sufficient evidence to support a finding that appellant entered the house by stealth"). Thus, the evidence presented at trial supports a finding that appellant trespassed by stealth.

{¶30} Moreover, the jury was entitled to reject appellant's version of events, including his assertion that he announced his presence by calling out the victim's name. *See, e.g., State v. Willey*, 2026-Ohio-242, ¶ 25 (4th Dist.) ("The trier of fact is free to believe all, part, or none of a witness's testimony."). Appellant's disagreement with the jury's interpretation of the evidence does not mean that the jury clearly lost its way and committed a manifest miscarriage of justice by finding that appellant trespassed by stealth. *See, e.g., State v. Hall*, 2014-Ohio-2959, ¶ 2 (4th Dist.) ("When conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the jury rejected the defendant's version of the facts and believed the testimony presented by the state."). The State thus presented substantial, credible evidence to establish that appellant trespassed by stealth and the jury's finding that appellant trespassed by stealth is not against the manifest weight of the

evidence.

**{¶31}** Because the State presented substantial, credible evidence to establish that appellant trespassed by stealth, we need not consider appellant's argument that the evidence fails to demonstrate that he trespassed by deception.

**{¶32}** Consequently, in view of the foregoing, we do not believe that appellant's burglary conviction is against the manifest weight of the evidence.  Appellant has not established that the case at bar is one of the exceptional cases in which the evidence weighs heavily against his burglary conviction.

C

Felonious Assault

**{¶33}** Appellant also asserts that his felonious assault conviction is against the manifest weight of the evidence.  He contends that the weight of the evidence shows that he acted in self-defense.

**{¶34}** "R.C. 2901.05(B) codifies a person's right to use force in self-defense." *State v. Knuff*, 2024-Ohio-902, ¶ 190. To invoke the affirmative defense of self-defense, a defendant must point to some evidence that tends to show that (1) the defendant was not at fault in creating the situation giving rise to the affray, (2) the defendant had a bona fide belief that the defendant was in imminent danger of death or great bodily harm and that the only means of escape from the danger was in the use

of force, and (3) the defendant did not violate any duty to retreat or avoid the danger. *State v. Messenger*, 2022-Ohio-4562, ¶ 14 and 22; R.C. 2905.01(B)(1). If the defendant satisfies this burden of production, the State then bears the burden "to 'prove beyond a reasonable doubt that the accused person did not use the force in self-defense.'" *Knuff*, 2024-Ohio-902, at ¶ 190, quoting R.C. 2901.05(B)(1); *accord Messenger*, 2022-Ohio-4562, at ¶ 19 ("the defendant has the burden of producing legally sufficient evidence of self-defense to trigger the state's duty to overcome that evidence"). "Because each element must exist for a self-defense claim to prevail, the state can defeat a self-defense claim by disproving any one of these elements beyond a reasonable doubt." (Citations omitted.) *Knuff*, 2024-Ohio-902, at ¶ 191.

{¶35} In the case sub judice, appellant asserts that he was not at fault in creating the situation that gave rise to the affray and that he had a bona fide belief that he was in imminent danger. We recognize that appellant presented evidence that tended to show that the victim was the initial aggressor when appellant claimed that the victim poked him in the eye. The victim's testimony, however, suggested that appellant was the initial aggressor. The victim stated that appellant pushed him and caused him to fall. The victim's testimony thus indicated that appellant was at fault in creating the situation

giving rise to the affray, and his testimony allowed the jury to conclude, beyond a reasonable doubt, that appellant did not act in self-defense.  We therefore do not agree with appellant that his felonious assault conviction is against the manifest weight of the evidence.

{¶36} As a final matter, we observe that appellant also appealed the trial court's judgment that sentenced him to prison for violating the community control sanctions that the court imposed in a different case.  He has not, however, assigned any error to this judgment.  Given the absence of any assignment of error pertaining to this judgment, we affirm the court's judgment.  *See Ford v. Crawford*, 2021-Ohio-454, ¶ 3 (2nd Dist.) ("If a brief fails to articulate an assignment of error with a supporting argument, an appellate court may affirm the trial court's decision on this basis.").

{¶37} Accordingly, based upon the foregoing reasons, we overrule appellant's sole assignment of error and affirm the trial court's judgments.

                                              JUDGMENTS AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted.  The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period set forth in the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Hess, J.: Concur in Judgment & Opinion

For the Court

BY:_____
     Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 22, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.