[Cite as *State v. Smith*, 2025-Ohio-2939.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

KYLE W. SMITH,

    DEFENDANT-APPELLANT.

CASE NO. 1-24-53

OPINION AND
JUDGMENT ENTRY

Appeal from Allen County Common Pleas Court
Trial Court No. CR2024 0025

**Judgment Affirmed**

**Date of Decision: August 18, 2025**

APPEARANCES:

    *William T. Cramer* for Appellant

    *John R. Willamowski, Jr.* for Appellee

**WALDICK, P.J.**

{¶1} Defendant-appellant, Kyle Smith ("Smith"), appeals the August 15, 2024 judgment of conviction and sentence entered against him in the Allen County Court of Common Pleas, following a jury trial in which Smith was found guilty of multiple felony-level drug and firearm offenses. For the reasons set forth below, we affirm.

*Procedural History*

{¶2} This case originated on March 14, 2024, when an Allen County grand jury returned a five-count indictment against Smith. On March 21, 2024, Smith filed a written plea of not guilty.

{¶3} On April 11, 2024, a superseding indictment was filed in the case, charging Smith as follows: Count 1 – Possession of a Fentanyl-Related Compound, a first-degree felony in violation of R.C. 2925.11(A), (C)(10)(b), and (C)(11)(e); Count 2 – Aggravated Possession of Drugs (Methamphetamine), a second-degree felony in violation of R.C. 2925.11(A) and (C)(1)(c); Count 3 – Illegal Manufacture of Drugs, a second-degree felony in violation of R.C. 2925.04(A) and (C)(2); Count 4 – Engaging in a Pattern of Corrupt Activity, a first-degree felony in violation of R.C. 2923.32(A)(1) and (B)(1); and Count 5 – Having Weapons While Under Disability, a third-degree felony in violation of R.C. 2923.13(A)(3). Counts 1, 2, and 3 of the superseding indictment also each contained a firearm specification pursuant to R.C. 2941.141(A). Additionally, Counts 1, 2, 3, and 4 of that indictment

contained forfeiture specifications relating to a firearm and United States currency, and Count 5 contained a firearm forfeiture specification. On April 17, 2024, Smith filed a written plea of not guilty to the superseding indictment.

{¶4} On August 12, 2024, a jury trial commenced in the case. At the close of the two-day trial, the jury returned verdicts finding Smith guilty as to all crimes and specifications alleged in the indictment at issue.[1]

{¶5} On August 14, 2024, a sentencing hearing was held. The trial court sentenced Smith as follows: Count 1 – a mandatory indefinite prison term of 6 to 9 years, plus an additional 1-year mandatory prison term for the firearm specification; Count 2 – a mandatory indefinite prison term of 4 to 6 years; Count 3 – a mandatory indefinite prison term of 4 to 6 years; Count 4 – a non-mandatory indefinite prison term of 4 to 6 years; and Count 5 – a non-mandatory prison term of 12 months, with all prison terms to be served consecutively. On August 15, 2024, the trial court journalized its sentencing orders.

{¶6} On September 10, 2024, Smith filed the instant appeal.

---

[1] During the course of the trial, the trial court granted a prosecution motion to amend the dates alleged in Counts 3 and 4 of the superseding indictment, from on or about the date of February 1, 2024 to a range of dates that were from on or about January 1, 2024 to February 1, 2024.

*Summary of Evidence Presented at Trial*

{¶7} The record reflects that the State of Ohio presented the testimony of three witnesses at trial: (1) Deputy Evan Thomas of the Allen County Sheriff's Office, who was formerly assigned as an investigator with the West Central Ohio Crime Task Force; (2) Investigator Deana Lauck, a Lima Police Department officer assigned to the West Central Crime Task Force; and (3) Kristin Canfield, a forensic scientist employed by the Ohio Bureau of Criminal Investigation ("BCI") and an expert in controlled substance analysis. The prosecution also admitted 100 evidentiary exhibits. The defense presented no evidence.

{¶8} The state's evidence at trial reflected that, in January of 2024, the West Central Ohio Crime Task Force received information from confidential informants and other sources that resulted in task force investigators launching a short-term investigation of Smith's residence at 1912 East Elm Street, Lot 16, in Lima. As part of that investigation, officers began conducting surveillance of the residence and also stopping vehicles that were coming and going from the home. During the surveillance of Smith's residence and neighborhood, officers observed Smith interacting with an individual identified as Paris Foster. Foster was known to the task force to be involved in narcotics trafficking, with ties to the Dayton, Ohio area, a source-city from which drugs are often supplied to Allen County.

{¶9} Subsequently, task force officers procured a search warrant for Smith's residence, based upon an affidavit containing information obtained during the

investigation. That search warrant was served at Smith's East Elm Street residence in the evening hours of February 1, 2024. When officers made entry pursuant to the search warrant, they found Smith's girlfriend, Ashley Carnes, in the living room, Smith's mother, Dalene Smith, in a back bedroom, and Smith in another bedroom. A search of Smith's person revealed a bindle of suspected narcotics, cash, and a flip phone.

{¶10} In the bedroom where Smith was located, investigators found drug paraphernalia, including a scale, pipe, and torch. A nightstand in that same bedroom contained a black bag filled with multiple bags of suspected narcotics, a nutribullet blender container with white powder residue on it, and used Keno gambling receipts, which are commonly folded up into paper bindles and utilized to hold narcotics for distribution. The blender container was significant in that such blenders are used to blend, or "cut", narcotics with other substances, such as baking soda, in order to increase the quantity of the narcotics before selling them. Also located in that bedroom were additional cell phones, Smith's debit card, a sheet of paper upon which debts owed by or to more than a dozen named persons were noted, a box of baking soda, and a bag of pills. The notations on that sheet of paper, which was found sitting on the bed, included a running tally of money owed to Paris Foster, suggesting that Foster was supplying Smith with narcotics, which Smith would pay Foster for, but then Smith would assume more indebtedness to Foster after Foster would front Smith additional quantities of drugs.

{¶11} Lastly, in that same bedroom, officers also found Smith's Ohio identification card and wallet. The address for Smith listed on his Ohio I.D. card was 1912 East Elm Street, Lot 16. Inside a safe kept in that bedroom, officers located a loaded and operable firearm, ammunition, bank envelopes containing $1300.00 in cash, gold and silver coins, a photo of Smith and his girlfriend, Ashley, numerous suboxone strips, and a ledger. The ledger contained a number of individual names and what appeared to be a record of the amount of money owed to Smith by each of the individuals.

{¶12} Following the execution of the search warrant, a data extraction was performed on Smith's cell phone. The content of text messages sent to and from the phone during the month of January of 2024 was introduced in evidence at trial. That evidence included numerous text messages to and from multiple individuals relating to narcotics dealing on Smith's part, including negotiations as to the weight and price of drugs being sold. The text messages reflected that Smith's girlfriend actively assisted him in the drug dealing. The messages also referred to money owed for drugs sold by Smith.

{¶13} The various quantities of suspected controlled substances located in Smith's possession during the execution of the search warrant were subsequently weighed and analyzed at BCI. Among the substances seized from Smith was found to be approximately 135 grams of methamphetamine; approximately 43 grams of a mixture of xylazine, heroin, and fentanyl; and .16 grams of a mixture of xylazine

and fentanyl. The residue noted on the blender container was determined to be a mixture of xylazine and fentanyl. Additionally, BCI confirmed there were nearly 250 strips of suboxone, a prescription medication used to treat opioid dependence. Finally, small quantities of methylphenidate and diazepam were identified in various forms.

{¶14} Smith was arrested at the time of the search warrant execution on February 1, 2024, and was subsequently interviewed by task force investigators. That interview was recorded and was played for the jury at trial. In the interview, Smith admitted possessing the drugs found in his bedroom, but stated that he was unaware of the overall quantity. Smith indicated that he had just acquired the drugs that were found in the nightstand, but had not had a chance to weigh them. Smith stated that he thought Foster was setting him up by delivering an excessive quantity of drugs to the home, because the police arrived shortly after Foster left. Smith acknowledged that he and his girlfriend would get high, and claimed the drugs found in his possession were for personal use. Smith denied being a drug dealer but admitted that he sold drugs to some people in order to help them out. Smith stated the ledger from the safe was three years old and listed debts going back years. Smith admitted that the paper found on the bed related to money currently owed to him by other persons, but stated the debts were not all drug-related. Smith asserted that he made money through buying and selling cars at auction. Smith acknowledged that he had been fronted the drugs by Foster but said

he was going to pay Foster back after selling one of his vehicles. Smith also admitted that the bags of fentanyl and methamphetamine were worth about $1,400.00, and stated that he owed Foster around $5,000.00. Finally, Smith acknowledged that he used the blender to blend drugs with a cutting agent.

*Assignments of Error Raised on Appeal*

**First Assignment of Error**

**Appellant's due process rights were violated by a conviction for engaging in a pattern of corrupt activity based on insufficient evidence of an association with an enterprise.**

**Second Assignment of Error**

**Appellant's conviction for engaging in a pattern of corrupt activity was not supported by the weight of the evidence on the issue of associating with an enterprise.**

**Third Assignment of Error**

**Appellant was deprived of his right to the effective assistance of counsel when defense counsel failed to subject the prosecution's case to meaningful adversarial testing.**

**Fourth Assignment of Error**

**By clear and convincing evidence, the record does not support the trial court's consecutive sentences findings under R.C. 2929.14(C)(4).**

**Fifth Assignment of Error**

**Appellant's federal and state constitutional rights to a speedy trial were violated by the failure to satisfy the statutory 270-day time limit for trial set forth in R.C. 2945.71.**

**Sixth Assignment of Error**

**Appellant was deprived of his right to the effective assistance of counsel when defense counsel failed to move to dismiss for a speedy trial violation prior to trial.**

*First and Second Assignments of Error*

{¶15} In the first assignment of error, Smith argues that his conviction for Engaging in a Pattern of Corrupt Activity on Count 4 was not based on sufficient evidence. In the second assignment of error, Smith argues that his conviction for Engaging in a Pattern of Corrupt Activity on Count 4 was against the manifest weight of the evidence. As the first and second assignments of error both require a review of the evidence presented at trial in light of the statutory elements of the crime at issue, albeit with differing standards of review, we shall jointly address those assignments of error.

{¶16} It is well established that "[t]he legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *State v. Thompkins*, 78 Ohio St.3d 380 (1997), paragraph two of the syllabus.

{¶17} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259 (1991), paragraph two of the syllabus. Consequently, "[t]he relevant inquiry

is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "'In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact.'" *State v. Williams*, 2024-Ohio 2307, ¶ 21 (3d Dist.), quoting *State v. Jones*, 2013-Ohio-4775, ¶ 33 (1st Dist.).

{¶18} By contrast, when reviewing whether a verdict was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). In doing so, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.* Nevertheless, when assessing a manifest-weight challenge, a reviewing court must still allow the trier-of-fact appropriate discretion on matters relating to the credibility of the witnesses. *State v. Stewart*, 2023-Ohio-253, ¶ 11 (3d Dist.), citing *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 2012-Ohio-5233, ¶ 9 (3d Dist.), quoting *State v. Hunter*, 2011-Ohio-6524, ¶ 119.

{¶19} In the instant case, Smith was convicted on Count 4 of Engaging in a Pattern of Corrupt Activity in violation of R.C. 2923.32(A)(1), which provides that "[n]o person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity * * *." Pursuant to R.C. 2923.31(I)(2)(c), "corrupt activity" includes drug trafficking, drug manufacturing, and any drug possession that is at least a fourth-degree felony. Pursuant to R.C. 2923.31(E), a "pattern of corrupt activity" means "two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event." "Enterprise" is defined in R.C. 2923.31(C) and includes "any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity." "Enterprise" includes illicit as well as licit enterprises. *Id*.

{¶20} Smith concedes on appeal that there was clear evidence presented at trial of corrupt activity through drug possession and manufacturing. However, Smith argues in the first assignment of error that the evidence was insufficient to prove that he was associated with any enterprise, as required to sustain a conviction for Engaging in a Pattern of Corrupt Activity. Similarly, in the second assignment of error, Smith asserts that his conviction for Engaging in a Pattern of Corrupt

-11-

Activity was against the manifest weight of the evidence as to the issue of associating with an enterprise.

{¶21} In *State v. Beverly*, 2015-Ohio-219 (2015), the Supreme Court of Ohio noted that the statutory definition of an enterprise is "remarkably open-ended." *Id.*, at ¶ 8. Additionally, "[i]t is easy to prove the existence of certain enterprises, especially those with licit purposes: there is a document memorializing the creation of a partnership or corporation, etc." *Id.*, at ¶ 9. However, "in most cases involving a RICO-type conviction, the existence of an enterprise is more difficult to establish because the enterprise is entirely an 'association in fact,' i.e., a de facto enterprise." *Id.*, citing *U.S. v. Turkette*, 452 U.S. 576, 583 (1981). "An association-in-fact enterprise has been defined as 'a group of persons associated together for a common purpose of engaging in a course of conduct.'" *Id*. Put another way, "'an association-in-fact enterprise is simply a continuing unit that functions with a common purpose.'" *Beverly*, at ¶ 9, quoting *Boyle v. U.S.*, 566 U.S. 938, 948 (2009). Finally, "the existence of an enterprise, sufficient to sustain a conviction for engaging in a pattern of corrupt activity under R.C. 2923.32(A)(1), can be established without proving that the enterprise is a structure separate and distinct from a pattern of corrupt activity." *Beverly*, at ¶ 13.

{¶22} This Court addressed the proof necessary to establish association with an enterprise in *State v. Siferd,* 2002–Ohio–6801 (3d Dist.), where we noted in relevant part:

Within the assigned errors, Siferd asserts that the state failed to prove that he was "employed by or associated with" the * * * drug enterprise. * * * Siferd characterizes himself as "nothing more than a drug addict who spent all he had on his cocaine addiction," concluding that "Ohio RICO was never meant to reach these facts." * * *

Federal and state courts have generally defined the concept of being "associated with" an enterprise within the overall context of the statute, often concluding that a defendant has "associated with" an enterprise when he or she has "participate[d] in, directly or indirectly, the affairs of the enterprise." [See *State v.* Hughes, 1992 WL 52472 (2d Dist. Mar. 13, 1992)]. In [*State v.*] *Schlosser*, [79 Ohio St.3d 329 (1997)], the Ohio Supreme Court described the level of association necessary to support an R.C. 2923.32(A)(1) conviction in a broad sense, indicating that the state "had to prove that each defendant was *voluntarily connected* to the pattern [of corrupt activity comprising the enterprise], and performed two or more acts in furtherance of it." [*Schlosser*, at 334 (emphasis added)]. Again, "the RICO net is woven tightly to trap even the smallest fish, those peripherally involved with the enterprise. * * * Direct evidence of agreement is unnecessary: 'proof of such an agreement may rest upon inferences drawn from relevant and competent circumstantial evidence, ordinarily the acts and conduct of the alleged conspirators themselves.' Additionally, once the conspiracy had been established, the government need show only 'slight evidence' that a particular person was a member of the conspiracy. Of course, a 'party to the conspiracy need not know the identity, or even the number, of his confederates.'" [*U.S. v. Elliott*, 571 F.2d 880, 903 (1978)].

*Id.*, at ¶¶ 42-43.

**{¶23}** Additionally, as the Supreme Court of Ohio stated in its recent decision, *State v. Brown*, 2025-Ohio-2804:

One way the State can show that a person was employed by or associated with an enterprise is by showing that the person entered into a conspiracy with another person who was a member of that enterprise. See *United States v. Godwin*, 765 F.3d 1306, 1323 (11th Cir. 2014), citing *United States. v. Browne*, 505 F.3d 1229, 1264 (11th Cir. 2007). That is because an associated-in-fact enterprise "shares

-13-

Case No. 1-24-53

important characteristics with the traditional conspiracy of criminal law." *United States v. Griffin*, 660 F.2d 996, 999 (4th Cir. 1981). A person who merely agrees "to participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity brings [him or her] within the conspiracy." *United States v. Gonzalez*, 921 F.2d 1530, 1540 (11th Cir. 1991).

Of course, not all drug sales involve a conspiracy. See *United States v. Bostick*, 791 F.3d 127, 139 (D.C.Cir. 2015). Someone who buys drugs from another person but does not have an agreement with that person to resell the drugs has not formed a conspiracy with the seller. See *United States v. Brown*, 726 F.3d 993, 1001 (7th Cir. 2013).

But when a buyer agrees with the seller to distribute the drugs that the buyer purchased, a conspiracy forms because "there is an agreement beyond the mere sale for personal consumption." *United States v. Kozinski*, 16 F.3d 795, 808 (7th Cir. 1994).

The Sixth Circuit Court of Appeals has recognized that the trust involved in selling drugs on credit (i.e., "fronting" drugs) "suggests more than a buyer-seller arrangement" between the parties to the transaction. *United States v. Nesbitt*, 90 F.3d 164, 167 (6th Cir. 1996). Ultimately, "evidence of fronting coupled with evidence of repeat drug purchases is sufficient 'to distinguish a conspiracy from a nonconspiratorial buyer-seller relationship.'" *United States v. Gallegos*, 784 F.3d 1356, 1360 (10th Cir. 2015), quoting *United States v. Johnson*, 592 F.3d 749, 755, fn. 5 (7th Cir. 2010).

*Brown*, *supra*, at ¶¶ 21-24.

{¶24} In the instant case, contrary to Smith's position on appeal, an abundance of evidence was presented at trial that served to establish Smith's involvement in, and association with, an enterprise engaged in a pattern of corrupt activity. As Smith concedes, his own pattern of corrupt activity through drug possession and drug manufacturing was clearly proven. The evidence also overwhelmingly established that Smith had been engaged in an ongoing business of

-14-

trafficking in drugs to numerous individuals, as reflected by the content of his text messages over time, his written records of accounts, his admissions – both direct and indirect – to the police when questioned about his drug-related activities, and the quantity of illegal drugs – along with cutting agents and equipment with which to cut narcotics for sale - found in his possession. As the definition of "enterprise" in R.C. 2923.31(C) includes any individual or sole proprietorship, evidence of such activities on Smith's part alone served to prove his association with an enterprise consisting of himself as the sole proprietor.

{¶25} However, there was also evidence presented at trial that Smith bought – or was advanced without prepayment – significant quantities of drugs from Paris Foster, an individual who was known to the task force to be involved in narcotics trafficking and who had ties to Dayton, Ohio, which is a source-city for illegal narcotics sold in Allen County. Furthermore, the text messages introduced into evidence clearly reflected that Smith's drug dealing was assisted by, and done in conjunction with, another individual identified in the messages as "Baby", presumably his girlfriend based on the content of those messages. Such evidence served to establish an association-in-fact enterprise, however loosely organized, with which Smith was associated and with the support of which he engaged in the pattern of corrupt activity at issue.

{¶26} We also find the facts of this case to be distinguishable from those in our prior decision of *State v. Agner*, 135 Ohio App.3d 286 (1999), upon which Smith

-15-

relies on appeal, where there was only evidence of a single defendant selling drugs with no further evidence of the defendant being a member of any larger organization or establishing that, even acting alone, the defendant constituted an enterprise.

{¶27} Accordingly, upon applying the relevant statutory definitions and case law to the facts presented in evidence in this case, we find with regard to the first assignment of error that there was sufficient evidence presented at trial, when viewed in a light most favorable to the prosecution, upon which any rational trier of fact could have found the essential elements of Engaging in a Pattern of Corrupt Activity proven beyond a reasonable doubt.

{¶28} As to the second assignment of error, where Smith raises a manifest-weight argument, our independent scrutiny of the record and weighing of the evidence presented, along with consideration of all reasonable inferences stemming therefrom, does not establish that the jury clearly lost its way or created a manifest miscarriage of justice in determining that Smith was associated with an enterprise and was guilty of Engaging in a Pattern of Corrupt Activity as charged in Count 4. Therefore, we also conclude that Smith's conviction for Engaging in a Pattern of Corrupt Activity is not against the manifest weight of the evidence.

{¶29} The first and second assignments of error are overruled.

*Third Assignment of Error*

**{¶30}** In the third assignment of error, Smith raises a claim of ineffective assistance of counsel. Specifically, Smith argues that his trial counsel was ineffective because counsel opted to waive opening statement and closing argument, and did not cross-examine witnesses called by the prosecution.

**{¶31}** A defendant asserting a claim of ineffective assistance of counsel on appeal must establish: (1) counsel's performance was deficient under the circumstances, falling below an objective standard of reasonable representation, and (2) the deficient performance prejudiced the defense. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 686-687 (1984); *State v. Drain*, 2022-Ohio-3697, ¶ 67.

**{¶32}** In order to establish that counsel's performance was deficient, the defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, at 687. To do so, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland*, at 689. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance of counsel. *State v. Grant*, 2023-Ohio-

270, ¶ 55 (3d Dist.). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *State v. Bradley*, 42 Ohio St.3d 136, 141 (1989).

{¶33} Prejudice results from a deficient performance by counsel when "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Bradley*, *supra*, at 142, quoting *Strickland* at 694. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*

{¶34} Although review of a claim of ineffective assistance of counsel involves a two-pronged analysis, an appellate court does not need to consider the facts of the case under both prongs if the appellant makes an insufficient showing on one. *State v. Crawford*, 2021-Ohio-547, ¶ 18 (3d Dist.), citing *State v. Baker*, 2018-Ohio-3431, ¶ 19 (3d Dist.).

{¶35} Before reviewing the specifics of Smith's ineffective counsel claims in this case, we first address his contention that, pursuant to *U.S. v. Cronic*, 466 U.S. 648 (1984), no showing of prejudice is needed to establish ineffective assistance of counsel here. Smith asks this Court to presume prejudice based on his assertion that counsel entirely failed "to subject the prosecution's case to meaningful adversarial testing." *Id.*, at 659.

{¶36} However, as the Supreme Court of Ohio noted in *State v. Drain*, 2022-Ohio-3697, "to trigger *Cronic's* presumption of prejudice, 'the attorney's failure

must be complete.'" *Id.*, at ¶ 69, quoting *Bell v. Cone*, 535 U.S. 685, 697 (2002). "The record must show that defense counsel 'failed to oppose the prosecution throughout [a particular] proceeding as a whole,' not merely that they 'failed to do so at specific points. For purposes of distinguishing between the rule of *Strickland* and that of *Cronic*, this difference is not of degree but of kind.'" *Id.*

{¶37} As will be detailed below, a review of the record in this case reflects that Smith's counsel did not completely fail to test the state's case throughout the proceeding as a whole. We therefore reject Smith's contention that *Cronic* is applicable here, and move on to apply the standards of *Strickland v. Washington* discussed above.

{¶38} With regard to Smith's claim concerning counsel's failure to make an opening statement, the record reflects that the State of Ohio made a brief opening statement at the start of the trial. At that time, Smith's counsel deferred opening statement until after the presentation of the state's case-in-chief. After the prosecution presented its evidence, moved for admission of its exhibits, and rested its case, Smith's counsel then effectively waived opening statement by noting for the record that the defense would not be presenting any evidence, as Smith had elected not to testify.

{¶39} In reviewing counsel's decision regarding opening statement, we note that "'[t]he decision not to make an opening statement is viewed as a tactical decision to which a reviewing court must be highly deferential.'" *State v. Magers*,

2004-Ohio-4013, ¶ 18 (3d Dist.), quoting *State v. Williams* (1991), 74 Ohio App.3d

686, 700 (1991), citing *Strickland v. Washington* (1984), 466 U.S. 668 (1984).  As

this Court discussed in *State v. Magers*, *supra*:

> While the preferred trial court strategy may well be to make an opening statement, we cannot say that the decision by Magers's counsel to waive an opening statement amounts to ineffective assistance of counsel. Considering the facts and possible witnesses, counsel could reasonably have concluded that it was too uncertain for defense counsel to predict to the jury what it expected the evidence to show and then to leave the jury wondering why the predicted evidence did not materialize.  At the usual time for opening statements, it may have been that defense counsel was undecided about whether to call Magers, the defendant, as a witness. Further, once the state rested its case and defense counsel decided it should call Magers as a witness, counsel may also have concluded that Magers, himself, was too unpredictable a witness for counsel to characterize his testimony in advance. Hence, defense counsel could reasonably have decided to waive even its delayed opening statement.

*Id*., at ¶ 18.

**{¶40}** Similarly, in the instant case, Smith's counsel could have reasonably

concluded initially that an opening statement was an uncertain endeavor or,

additionally, that an opening statement by the defense was unnecessary at that time

in light of the brevity of the opening statement presented by the prosecution.  After

the State of Ohio rested its case and Smith's counsel in effect waived opening

statement after opting not to present evidence, the record reflects that defense

counsel also noted that the matter had been discussed with his client and that it was

Smith's decision not to testify.  Additionally, the record reflects that the trial court

thereafter instructed the jury that the defense did not intend to present evidence, but

that the defense had the right not to do so because the burden of proof was on the State of Ohio.

{¶41} On such facts, and in light of the deference required by law of this Court to what is deemed a tactical decision on counsel's part, Smith has not established that counsel opting to forego an opening statement was deficient performance or otherwise unreasonable under the circumstances.

{¶42} With regard to counsel's failure to present a closing argument at trial, the record reflects that, after the close of the evidence, the State of Ohio presented a closing argument summarizing the evidence and highlighting the elements of the crimes at issue in the indictment. Following that, defense counsel noted for the record that the defense would be waiving closing argument. The trial court then immediately instructed the jury that the defense is not required to present a closing argument and was electing not to do so.

{¶43} It is well established that "[t]he waiver of closing arguments is a tactical decision and is thus not ineffective assistance of counsel." *State v. Line*, 2019-Ohio-4221, ¶ 14 (3d Dist.), citing *State v. Burke*, 73 Ohio St.3d 399, 405 (1995), *State v. Frierson*, 2018-Ohio-391, ¶ 31 (8th Dist.), and *State v. Guysinger*, 2017-Ohio-1167 (4th Dist.). As this Court has repeatedly recognized in reviewing claims of ineffective assistance, tactical or strategic trial decisions, even if ultimately unsuccessful, will not substantiate a claim of ineffective assistance of

counsel. *State v. Shoaf*, 2022-Ohio-3605, ¶ 50 (3d Dist.), citing *State v. Hines*, 2005-Ohio-6696, ¶ 38 (3d Dist.).

**{¶44}** In this case, Smith asserts that the corrupt activity charge in Count 4 was factually weak, claiming that there was little evidence of Smith associating with anyone else in a coordinated enterprise. Based on that assertion, Smith argues that his counsel was deficient in not making an argument in that regard to the jury. However, contrary to Smith's claims, and as discussed in the first and second assignments of error above, there was ample and firmly corroborated evidence of Smith's association with an enterprise. Smith also argues that counsel, in foregoing closing argument, failed to argue the burden of proof. Although this Court recognizes that counsel's performance may not have been optimal by making no such arguments on behalf of Smith, we note that Smith's counsel stressed fairness, impartiality, and the burden of proof during his voir dire and, more importantly, the trial court provided detailed instructions to the jury on the state's burden of proof and the presumption of innocence in its general charge at the close of the trial. The jury was also instructed that the evidence at trial does not include the closing arguments of counsel. Finally, we acknowledge there is an inherent, and not unreasonable, tactical strategy in waiving closing argument on behalf of a defendant in certain criminal cases, as such a waiver forecloses the ability of the prosecution to offer any rebuttal argument and to present certain key points that may have been purposely left by the state for final closing argument.

**{¶45}** Accordingly, on the basis of the applicable law as well as the record before us, Smith has not established that counsel's waiver of closing argument amounted to deficient performance on counsel's part.

**{¶46}** With regard to counsel's lack of cross-examination of the prosecution witnesses, the record reflects that the State of Ohio called only three witnesses at trial, of whom defense counsel asked no questions. The testimony of two of those witnesses, Investigator Deana Lauck and BCI chemist Kristin Canfield, was extremely narrow in scope and limited to issues that were uncontested, and reasonably so, on the facts of this case, with Lauck testifying solely as to the chain of custody on items seized in the search warrant and Canfield testifying concerning the weighing and analysis of the drugs found in Smith's possession. The prosecution's third witness, Deputy Evan Thomas, was the state's primary witness who provided the bulk of the testimony in support of all the elements of the crimes with which Smith was charged. However, essentially all aspects of the key testimony given by Thomas were corroborated at trial by the dozens of evidentiary exhibits presented in conjunction with that testimony.

**{¶47}** "[T]he decision whether to cross-examine a witness is a matter of trial strategy that 'is firmly committed to the trial counsel's judgment * * *.'" *State v. Berry*, 2021-Ohio-1132, ¶ 125 (3d Dist.), quoting *State v. Grate*, 2020-Ohio-5584, ¶ 148. In particular, foregoing cross-examination can be considered reasonable with regard to witnesses who have testified about facts that were not in dispute. *Grate*,

*supra*, at ¶ 148, citing *State v. Dean*, 2015-Ohio-4347, ¶ 272. Deciding not to cross-examine a witness is also a reasonable trial tactic where cross-examination may have served to emphasize already damaging testimony. *See State v. Brinkley*, 2005-Ohio-1507, ¶ 129.

{¶48} Upon applying those legal principles to the facts of the instant case, we must find that counsel's opting to forego all cross-examination, while perhaps questionable, was nevertheless a permissible strategic decision. In reaching that conclusion, we note that the trial record confirms that counsel's decisions on that issue were the result of purposeful trial strategy on counsel's part. Specifically, after counsel waived closing argument, having already waived opening statement and having opted to not cross-examine witnesses, the trial court inquired of defense counsel on the record, outside the presence of the jury, about counsel's decisions concerning those matters. Noting that defense counsel had waived closing argument and had not cross-examined witnesses, the trial court stated, "I'm not asking you to get into details, but Mr. Chamberlain, were those trial strategy decisions on your part to do those or not do those things?" (Tr., 428). In response, defense counsel confirmed that those decisions were trial strategy on his part, based on his training and experience. More importantly, Smith fails to articulate on appeal what specific, favorable information counsel could have theoretically elicited during cross-examination and, ultimately, Smith does not establish that he was prejudiced by the lack of cross-examination. Accordingly, we reject this claim.

{¶49} In summary, as to the third assignment of error as a whole, it is well established that the decisions of defense counsel in a criminal case regarding opening statement, closing argument, and cross-examination of witnesses are decisions that fall squarely within the realm of trial strategy, and decisions to which a reviewing court must accord great deference in light of the discretion granted by law to counsel with regard to such tactical choices.

{¶50} In this case, upon collectively considering counsel's decisions to forego opening statement, closing argument, and the cross-examination of witnesses, this Court is compelled to note that we view the same with disfavor. However, upon the specific facts reflected by the record of the trial proceedings, and upon applying the well-settled law cited above, we cannot find that defense counsel's overall performance fell below an objective standard of reasonableness.

As this Court observed in *State v. Pack*, 2000-Ohio-1792 (3d Dist.), at *5:

The motives and method behind the actions of an attorney during trial are beyond the review of this court. Further, decisions such as refraining from giving opening statements, treatment of jurors and witnesses and refraining from multiple objections are all part of a lawyer's trial strategy. Thus this court cannot say that a strategic decision to defend a client in a certain fashion rises to the level of prejudice or unreasonableness required by the law.

{¶51} Ultimately, in the instant case, while counsel's decisions regarding opening statement, closing argument, and the cross-examination of witnesses may have been questionable, particularly when considered as a whole, the overall record reflects a competent performance by counsel on behalf of Smith. Prior to trial,

Smith's counsel filed timely motions on behalf of Smith, including a demand for discovery, a motion for a bill of particulars, a motion to preserve evidence, a request for notice of the state's intent to use evidence, and a motion to compel digital and electronic evidence. Motions to suppress evidence were also filed on Smith's behalf, seeking to exclude the incriminating statements given by Smith to police and the evidence seized during the search of Smith's residence. Defense counsel attended pretrial hearings, and engaged in plea negotiations with the state to the potential benefit of Smith. At trial, counsel conducted a thorough voir dire, stressing the need for impartiality on the part of the jurors, highlighting the state's burden of proof, and questioning individual jurors about drugs and their ability to fairly sit as jurors in a drug-related case. Defense counsel also requested and effectuated a stipulation at trial as to Smith's prior drug conviction, to the extent that conviction was admissible as an element of the weapons under disability charge in Count 5, thereby limiting the potential prejudicial impact of such evidence being presented at trial. *See State v. Creech*, 2016-Ohio-8440. At trial, defense counsel also lodged an appropriate hearsay objection to a question asked by the prosecution of Deputy Thomas, and counsel further objected to the amendment of the indictment at trial. At the close of the state's case, counsel moved for acquittal pursuant to Crim.R. 29, and then renewed that motion at the time the defense opted to rest without presenting evidence. The record further reflects, as previously noted, that the decision to not present Smith's testimony in his defense was a decision made by Smith after

consultation with counsel. The record also does not reveal, nor does Smith argue on appeal, that there may have been other witnesses or evidence favorable to Smith that counsel failed to present at trial. Based on statements made by defense counsel during the course of the trial to the court or opposing counsel, the record also reflects familiarity with the information contained in discovery and with the charges at issue in the indictment, indicating trial preparedness on counsel's part. Finally, counsel also argued eloquently on Smith's behalf at the sentencing hearing.

{¶52} In *Strickland v. Washington*, *supra*, the United States Supreme Court held that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686.

{¶53} In this case, for all of the reasons discussed throughout our analysis of this assignment of error, we conclude that defense counsel's performance did not so undermine the adversarial process so as to impact the justness or reliability of the trial's outcome. While foregoing an opening statement, closing argument, and the questioning of witnesses may not be a preferred trial strategy, particularly when those decisions are viewed as a whole, the overall record of the case before us does not support a finding that defense counsel's performance was deficient, nor has resulting prejudice been established. We hasten to add that our decision in this case should not be interpreted as a general holding that similar actions by counsel in other

cases will never constitute ineffective assistance of counsel, as our decision here is based strictly on the circumstances reflected by the record in this particular matter.

{¶54} The third assignment of error is overruled.

*Fourth Assignment of Error*

{¶55} In the fourth assignment of error, Smith argues that the imposition of consecutive sentences was not supported by the record in this case.

{¶56} The standard of review applicable to Smith's sentence-related claim is whether the sentence is clearly and convincingly contrary to law. *State v. Marcum*, 2016-Ohio-1002; R.C. 2953.08. With regard to sentencing-review generally, the Supreme Court of Ohio has limited that review by holding that R.C. 2953.08(G)(2)(b) "does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12." *State v. Jones,* 2020-Ohio-6729, ¶ 39. Additionally, a trial court has full discretion to impose any sentence within the statutory range. *State v. Johnson*, 2021-Ohio-1768, ¶ 9 (3d Dist). "A sentence imposed within the statutory range is not contrary to law as long as the trial court considered the purposes and principles of felony sentencing contained in R.C. 2929.11 and the sentencing factors contained in R.C. 2929.12. *Id*., citing *State v. Dorsey*, 2021-Ohio-76, ¶ 15 (2d Dist.).

{¶57} In order to impose consecutive sentences, "a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and

incorporate its findings into its sentencing entry * * *." *State v. Bonnell*, 2014-Ohio-3177, syllabus.

**{¶58}** R.C. 2929.14(C)(4) provides:

If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶59}** When reviewing consecutive sentences on appeal, "[t]he plain language of R.C. 2953.08(G)(2) requires an appellate court to defer to a trial court's consecutive-sentence findings, and the trial court's findings must be upheld unless those findings are clearly and convincingly not supported by the record." *State v. Gwynne*, 2023-Ohio-3851, ¶ 5.

-29-

{¶60} In the instant case, the trial court made findings pursuant to R.C. 2929.14(C)(4)(b) in support of the consecutive sentences, and Smith does not contest that fact on appeal. Additionally, upon reviewing the entire record before us, we cannot clearly and convincingly find that the record does not support the trial court's findings with regard to consecutive sentences.

{¶61} To the contrary, the record is replete with factors that support the consecutive sentences imposed by the trial court. Specifically, in support of the trial court's finding that Smith's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender, the record reflects that Smith has a decades-long history of criminal convictions, for both misdemeanor and felony level crimes. Smith also has not responded favorably to sanctions previously imposed, and had served a prior prison term after violating the terms of the community control to which he had initially been sentenced. The presentence investigation upon which the trial court relied reflected that Smith had an ORAS score of 27 at the time of his prior sentencing, which indicated a high risk of reoffending. Additionally, in finding that consecutive sentences are necessary to protect the public from future crime by the offender and to punish the offender, the trial court accurately noted the devastating and even potentially deadly effect upon the general public of the two types of drugs Smith was involved in possessing and trafficking in this case, fentanyl and methamphetamine. Those facts, as well as other facts of the case established by the

evidence presented at trial, fully support the findings made by the trial court in support of consecutive sentences.

{¶62} In sum, when considering the record as a whole, Smith has not demonstrated by clear and convincing evidence that his consecutive sentences are contrary to law. Therefore, the fourth assignment of error is overruled.

*Fifth Assignment of Error*

{¶63} In the fifth assignment of error, Smith contends his statutory right to a speedy trial was violated, asserting that he was brought to trial beyond the time limit set forth in R.C. 2945.71(C)(2).

{¶64} R.C. 2945.71(C)(2) provides that a person charged with a felony shall be brought to trial within 270 days after the person's arrest. "'The statutory time period begins to run on the date the defendant is arrested; however, the date of arrest is not counted when computing the time period.'" *State v. Turner*, 2011-Ohio-4348, ¶ 12 (3d Dist.), quoting *State v. Maisch,* 2007–Ohio–6230, ¶ 26 (3d Dist.). Pursuant to R.C. 2945.71(E), each day a defendant is held in jail in lieu of bail on the pending charge shall be counted as three days in that 270-day calculation. "The prosecution and the trial courts have a mandatory duty to try an accused within the time frame provided by the statute." *State v. Ramey,* 2012–Ohio–2904, ¶ 14.

{¶65} However, R.C. 2945.72 allows for an extension of the time within which the accused must be brought to trial under certain circumstances. Specifically excluded from the speedy trial calculation is "[a]ny period of delay necessitated by

reason of a * * * motion, proceeding, or action made or instituted by the accused." R.C. 2945.72(E). The exclusion set forth in R.C. 2945.72(E) includes motions by the defendant for discovery or for a bill of particulars. *State v. Brown,* 2002–Ohio–7040. For the statutory time period to be tolled by reason of a defense motion for discovery, the prosecution must respond to the motion in a reasonable amount of time. *See State v. Johnson,* 2011–Ohio–994, ¶ 24 (3d Dist.) (finding that an 8-day response time to a defense discovery request was reasonable and therefore tolled the speedy trial time); *State v. Risner,* 2004–Ohio–186, ¶ 18 (3d Dist.) (finding that a 16-day response time to a defense discovery demand tolled the speedy trial statute).

{¶66} The standard of review in an appeal raising a speedy trial issue is to count the expired days as directed by R.C. 2945.71, *et seq. State v. Taylor*, 2014-Ohio-1793, ¶ 27 (3d Dist.), citing *State v. DePue,* 96 Ohio App.3d 513, 516 (1994); *see also State v. King,* 2007–Ohio–335, ¶ 30 (3d Dist.).

{¶67} In the instant case, it is undisputed that Smith remained in jail from the date of his arrest, February 1, 2024, until the time of trial, which commenced on August 12, 2024. Thus, the "3 for 1" provision of R.C. 2945.71(E) is applicable in this case, and the State of Ohio was required to bring Smith to trial within 90 days of his arrest. However, the record reflects that two tolling events occurred between the date of Smith's arrest and the date his trial began: Smith filed a demand for discovery on March 15, 2024, and he filed a motion to suppress evidence on April 22, 2024.

{¶68} As Smith accurately notes in his merit brief on appeal, 43 days are chargeable to the State of Ohio between the date of his arrest, February 1, 2024, and the filing of his discovery motion on March 15, 2024. On April 1, 2024, the State of Ohio filed a response to Smith's demand for discovery, which we find was a reasonable time in which to respond to the motion, a fact that Smith does not dispute.

{¶69} An additional 21 days then elapsed between the filing of the state's discovery response on April 1, 2024 and April 22, 2024, the date on which Smith filed his motion to suppress. Smith does not contest the fact that the filing of the motion to suppress again tolled the speedy trial time until July 16, 2024, when the trial court filed a judgment entry overruling the suppression motion after a hearing thereon. Following that, another 27 days elapsed until the trial began on August 12, 2024.

{¶70} Adding all of that time together, the record reflects that Smith's trial commenced on the 91st day after his arrest, which is his contention on appeal in support of his speedy trial claim. However, the date on which the trial began, August 12, 2024, was a Monday, meaning that the 90th day of Smith's speedy trial time fell on a Sunday.

{¶71} Crim.R. 45(A) governs the computation of time in criminal cases and provides:

> In computing any period of time prescribed or allowed by these rules, by the local rules of any court, by order of court, or by any applicable statute, the date of the act or event from which the designated period

of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, Sunday, or legal holiday, in which event the period runs until the end of the next day which is not Saturday, Sunday, or legal holiday. When the period of time prescribed or allowed is less than seven days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in computation.

**{¶72}** Thus, upon applying Crim.R. 45(A) to the speedy trial time calculation in this case, Smith was brought to trial within the prescribed time limit set forth in R.C. 2945.71 and his speedy trial claim lacks merit.

**{¶73}** The fifth assignment of error is overruled.

*Sixth Assignment of Error*

**{¶74}** In the sixth assignment of error, Smith argues that he was denied the effective assistance of counsel because his trial counsel failed to move, prior to trial, for Smith's discharge on the basis of speedy trial grounds.

**{¶75}** We note that the standard of review applicable to ineffective assistance of counsel claims was set forth above in the third assignment of error, and we incorporate the same here by reference.

**{¶76}** As we concluded in the fifth assignment of error, *supra*, that Smith was brought to trial within the time period mandated by Ohio's speedy trial statute, the failure of Smith's trial counsel to make a futile motion does not constitute deficient performance and Smith was not denied the effective assistance of counsel in that regard. *See State v. Harrison*, 2015-Ohio-1419, ¶ 89 (3d Dist.) ("'[T]he failure to make a futile objection does not constitute deficient performance for an

ineffective assistance of counsel claim.'", quoting *State v. Corder*, 2012-Ohio-1995, ¶ 29 (4th Dist.)).

**{¶77}** The sixth assignment of error is overruled.

*Conclusion*

**{¶78}** Having found no error prejudicial to the defendant-appellant, Kyle Smith, in the particulars assigned and argued, the judgment of the Allen County Court of Common Pleas is affirmed.

***Judgment affirmed***

**ZIMMERMAN and MILLER, J.J., concur.**

Case No. 1-24-53

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. See App.R. 30.

_____
Juergen A. Waldick, Judge

_____
William R. Zimmerman, Judge

_____
Mark C. Miller, Judge

DATED:
/jlm

-36-